**DELTAK, INC., Plaintiff-Appellant,**

v.

**ADVANCED SYSTEMS, INC.,**
**Defendant-Appellee.**

No. 83–3072.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1984.

Decided July 18, 1985.

As Amended on Denial of Rehearing
Sept. 17, 1985.

**358**

David C. Hilliard, Pattishall, McAuliffe & Hofsetter, Chicago, Ill., for plaintiff-appellant.

Gareth G. Morris, Gen. Counsel, Advanced Systems, Inc., Arlington Heights, Ill., for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and GRANT, Senior District Judge.[*]

CUDAHY, Circuit Judge.

Plaintiff Deltak, Inc., brought this copyright infringement action against defendant Advanced Systems, Inc. ("ASI"). In an Order of February 5, 1982, the district court entered summary judgment for Deltak on the issue of ASI's liability for copyright infringement. On August 16 and 17, 1983, a bench trial was held on the issue of damages. The district court filed a searching opinion on October 20, 1983, finding that Deltak had failed to prove either its lost profits or ASI's additional revenues, and awarding no damages. 574 F.Supp. 400 (N.D.Ill.1983). Deltak now appeals the damages determination. ASI takes no appeal on liability. Although we accept a number of aspects of the district court's analysis, we vacate and remand on the issue of damages.

## I.

Deltak and ASI are among the largest firms in the business of selling textbooks and audio and videotapes used to teach data processing and other computer related skills. Each firm's materials are, according to the district court, highly substitutable for those of the other. During the relevant period, 1980–81, Deltak's marketing materials included a package entitled the Career Development System (the "CDS"). The complete CDS kit (the "Kit") included a videotape, a book titled *In-House Education Guide*, a manual of forms and a "Task List." The Task List "is a large glossy pamphlet.... On the left-hand side of each page of the Task List is a list of data-processing tasks that a company might want to teach its programmers, and on the right-hand side a list of the specific teaching materials that Deltak sells for each task." 574 F.Supp. at 402.

It is the left-hand list that ASI copied. ASI paid two consultants $3,000 to create the infringing document, which combined Deltak's CDS task designations with a list of ASI's teaching materials.

> The consultants duplicated the left-hand side of the CDS Task List, using the identical language in which Deltak had described the tasks and arranging the task descriptions in the same order as Deltak; but on the right-hand side of each page, instead of listing the Deltak

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

materials suitable to perform each task the authors of the infringing document listed ASI teaching materials.

574 F.Supp. at 402. The infringing document was developed in response to requests from ASI customers who wanted a way to key tasks on the Deltak List to ASI's materials. ASI intended that its salespeople and marketing representatives would show the document to customers to enable them to pick ASI materials with which to train their programmers in Deltak specified tasks. ASI produced either 42 or 50 copies of the document, *compare* 574 F.Supp. at 402 *with id.* at 404, and, in August, 1980, distributed 15 of them without charge to customers of Deltak, each of which was also an actual or potential customer of ASI.

This suit was brought in December of 1980 under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, alleging copyright infringement. (A pendant state-law claim has been abandoned.) After suit was brought, ASI began retrieving the copies, and by February, 1981, none of the infringing documents remained in the possession of customers. In May, 1981, the district court granted a preliminary injunction, and it later granted summary judgment to Deltak on the issue of liability. ASI does not contest this ruling that it infringed Deltak's copyright. ASI

> copied the exact language in which the CDS Task List described each task and the exact sequence in which the tasks were listed, which was not a random sequence. The copying was deliberate, it was done by a substantial corporation that should have known better, and the documents submitted into evidence in connection with the deposition of ASI's Miss Sorn show consciousness of probable violation of the copyright laws.

574 F.Supp. at 402–03.

## II.

Section 504(a) of the Copyright Act, 17 U.S.C. § 504(a), allows recovery of damages in accordance with two distinct approaches. "Statutory damages" are available under section 504(c), but only if the copyright is timely registered. 17 U.S.C. § 412. Statutory damages are limited to $10,000, unless the infringement was willful, in which case these damages are available up to $50,000. Neither statutory damages, which the district court would "have [had] no hesitation in awarding," 574 F.Supp. at 403, nor attorney's fees pursuant to section 505, are available here because, as the parties agree, Deltak did not so register its copyright.

Section 504(a) also provides that the copyright owner may recover his or her "actual damages and any additional profits of the infringer, as provided by subsection (b)." Subsection (b) provides as follows:

> (b) Actual Damages and Profits.—The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

At trial, Deltak presented testimony regarding both these theories of damage recovery under section 504(b). There was evidence that ASI had gross revenues of $392,580 during the infringement period from sales to the 15 customers who received the infringing document. The trial court found that 48% of those revenues were profit to ASI, while the remainder were costs that must be subtracted from gross revenues. 574 F.Supp. at 412. However, the district court was unable to determine what portion of the gross revenues were due to the infringement and what portion were due to other factors such as lawful marketing methods. 574 F.Supp. at

411–12.[1] The court reasoned that although ASI's

> revenues from the 15 customers who received the document did rise in the infringement period to an extent not fully explained by any of the evidence presented at trial; ... it would exceed the bounds of permissible speculation to base a damage award on the hypothesis that the infringing document boosted ASI's revenues.

574 F.Supp. at 411. This analysis seemingly placed the burden of distinguishing profits due to the infringement from "the elements of profit attributable to factors other than the copyrighted work," 17 U.S.C. § 504(b), on the owner instead of on the infringer. See H.R. REP. No. 1476, 94th Cong., 2d Sess. 161, *reprinted in* 1976 U.S. CODE CONG. & AD.NEWS 5659, 5777. However, this questionable analysis is not before us because Deltak has, for reasons not clear to this court, elected not to appeal this portion of the district court's judgment. Deltak Br. at 3 n. *.

Deltak does, however, appeal the district court's judgment that it suffered no actual damages as a result of the infringement. It does not contend that its actual damages should be measured by any lost profits on sales of teaching materials to the customers lost because of the infringement. Instead, Deltak contends, as it did below, that its damages should be computed by multiplying $4925, which the district court "accepted" as a reasonable estimate of the profit per CDS Kit realized by Deltak for a small increase in production and sales, or $5000, the list price of the Kit, by fifty, the number of copies of the infringing document that were made by ASI. (For purposes of this appeal we are accepting 50 as the number of documents produced.)

There are three factual premises on which actual damages could be so awarded. First, it could be that, but for the infringement, Deltak would have sold fifty more copies to various customers (other than ASI). Second, ASI might have purchased (and hence Deltak sold) fifty copies so as not to have infringed. Third, when ASI reproduced the fifty infringing copies, it was manufacturing assets and thereby damaging Deltak to the extent of the value of use of the assets in terms of acquisition costs saved by ASI.

The trial court found that the first premise could not support recovery, 574 F.Supp. at 404, and Deltak does not appeal on this basis. The copies created by ASI could only have prevented sales by Deltak to those customers who received them. The fifteen distributed copies were all given to customers who already had a copy of the Deltak Task List. These customers had permission from Deltak to make copies of the List for the use of employees at their plant locations. There was no evidence that even one of these customers would have purchased an additional copy of the List from Deltak instead of making one itself. Given the evidence of the steep purchase price of the List, there are strong grounds for inferring that the customer would not have purchased an additional copy of it.

■ Deltak's argument on appeal is primarily directed toward the third premise, but also challenges the trial court's denial of the second premise. Deltak Br. at 10. We will first consider this third argument concerning the value of use of manufactured assets. Deltak argues that by making fifty copies of the infringing work, each valued at $5000 (list price) or $4925 (profit to Deltak), ASI gained $250,000 in marketing tools without payment. The district court did find that the copied list "had some potential value to ASI as a marketing tool." 574 F.Supp. at 404. The value of the infringer's use is a permissible basis

---

**1.** In its original, though tentative, oral opinion, the district court found that of ASI's revenues of $392,580 during the infringement period, 50% were deductible costs and some were explicable as ordinary sales, leaving $100,000 in unexplained profits during the period. The court further found one quarter of this profit due to the infringing document and the remainder due to lawful marketing methods. The court therefore tentatively awarded Deltak $25,000 in infringer's profits as damages. Tent.Op. at 41–48.

for estimating actual damages. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir.1977). Value of use was accepted as such by the district court, 574 F.Supp. at 404, and on appeal ASI concurs. ASI Br. at 15. ("Actual damages" are not defined either in the Copyright Act or in the accompanying legislative reports. 3 M. NIMMER, NIMMER ON COPYRIGHT § 14.02 at 14–6 (1984).)

■ However, we see no reason that damages calculated on the value of use method should vary with the number of copies the infringer produced, at least where that number differs from the number of copies used by the infringer. Here ASI ran off fifty copies of the list, but distributed only fifteen to customers of Deltak. Presumably, if ASI had run off two thousand copies, and kept all but the distributed fifteen in a locked warehouse, Deltak could claim $10,000,000, even though the effect would be no different from the actual infringement before us. We believe this is a sufficient *reductio ad absurdum* of Deltak's assertion that ASI profited by the value of use of all fifty copies, but it does not preclude consideration of the value to ASI of the fifteen copies distributed to customers.[2] *Cf. Alfred Bell & Co. v. Catalda Fine Arts, Inc.*, 86 F.Supp. 399, 411–13 (S.D.N.Y.1949) (copyright owner allowed recovery of profits only on infringing prints actually sold, not on infringing prints manufactured but not sold; infringer's costs allocated similarly), *aff'd as modified on other grounds*, 191 F.2d 99 (2d Cir.1951).

■ The primary value of these marketing tools, when in the hands of customers,

was to increase sales by ASI to the customers by inducing them to switch their purchases from Deltak to ASI. However, as discussed above, the district court found that there was insufficient evidence on which it could base a finding that any of ASI's sales during the infringement period were due to the infringing copies. Since Deltak does not appeal this finding, we are constrained to hold that the value of use to Deltak of the fifteen distributed infringing copies was, in this primary sense, zero.

■ But the value of use of a marketing tool is not, of course, identical to the profits it generates. After all, not all marketing and advertising campaigns are successful, and even the unsuccessful ones cost money to undertake. We presume it is rather rare for the costs of a campaign to vary (after the fact) in proportion to its success. Here, the distributed copies were essential components of the (as it turned out unsuccessful) campaign undertaken by ASI. In this regard, they were like architectural plans are to the construction of a building. The contractor hopes to profit from the construction of the building, but incurs the cost of the architectural plans whether or not he does actually profit. If ASI had cared to undertake its campaign in a legal manner, it could have purchased copies of the Deltak task list. Each of the copies ASI distributed had a value of use to it equal to the acquisition cost saved by infringement instead of purchase, which ASI was then free to put to other uses. *See Aitken, Hazen, Hoffman, Miller, P.C. v. Empire Construction Co.*, 542 F.Supp. 252, 262–63 (D.Neb.1982) (awarding fair market value as actual damages for infringement of copyright in architectural plans); *see also Nucor Corp. v. Tennessee*

**2.** ASI argues that Deltak is precluded from recovering damages for the copies not distributed to customers because of its agreement in the Final Pretrial submission that the issue presented by this case was "the amount, if any, of Deltak's damages and Advanced Systems' profits caused by *distribution* of the disputed work," Record on Appeal, Item 87 (emphasis supplied). *See* ASI Br. at 14 n. *. However, this statement of the case follows immediately upon an agreed statement of the facts in which ASI agrees that copies were "distributed" to customers and to employees of ASI, and Deltak assert-

ed in the following statement of contested facts that it had been damaged by each of the fifty copies. Therefore we do not base our limitation of recovery to those damages caused by distribution of the copies to customers on this reading of the Final Pretrial Submission.

Of course, if Deltak had sufficiently proven up at trial valuable "uses" of the Task Lists by ASI's personnel, this might have provided a basis for damages relating to lists which were not distributed to customers.

*Forging Steel Service, Inc.*, 513 F.2d 151, 152–53 (8th Cir.1975) (infringers of plaintiff's common law copyright in architectural plans were liable for fair market value of plans); *Atlantic Monthly Co. v. Post Pub. Co.*, 27 F.2d 556, 560 (D.Mass.1928) (awarding saved acquisition cost as profit made by copyright infringer). This is simply an application of the general principle that value of use "amounts to a determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff['s] work." *Sid & Marty Krofft Television Productions*, 562 F.2d at 1174.[3]

The district court did not directly consider the saved acquisition cost of the distributed copies as the value of use of the infringement to ASI. The district court did, however, consider the problem from the other side of the counter, as it were. The district court considered Deltak's argument that it lost sales of fifty units to ASI. The value of use in terms of saved acquisition costs is equal (except for Deltak's marginal production costs) to Deltak's lost profits from the avoided sales. The district court rejected recovery on this, the second factual premise mentioned above.

> [T]he particular scenario in which ASI goes hat in hand to Deltak to buy 50 copies—or one copy—of the Task List is quite fantastic even on the counter-factual hypothesis (fundamental to this approach to estimating damages) that ASI had a pure heart.... [It is] very unlikely that even a pure-hearted ASI would have been willing to tip its competitive hand to Deltak in this fashion.

574 F.Supp. at 404.

Now it may be that ASI's competitive motivations explain why it did not purchase one or more copies of the Task List from Deltak. But the conclusion that in the counterfactual situation in which ASI does not infringe it would not have purchased any copies of the Task List from Deltak is sheer speculation. The district court cited no evidence in support of its statement, and our review of the record discloses no evidence that if ASI had not infringed it would have given up the whole marketing campaign rather than purchase any copies

---

**3.** Perhaps inconsistently with its concession that value of use is a proper method of calculating actual damages, ASI argues that assessment of damages in terms of saved acquisition cost is equivalent to a reasonable royalty recovery, which it contends is not available in copyright cases. *See* ASI Br. at 19–22. ASI relies on *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1159 (6th Cir.1978), a patent case, in which it is asserted that reasonable royalties are a substitute (in patent law) for actual damages or infringer's profits when those are not provable. ASI then argues that statutory damages fulfill this function in copyright cases, and therefore since statutory damages are not available here, saved acquisition cost damages are not available to Deltak.

We are not convinced by ASI's presentation of this plausible argument. We recognize that there are similarities between the concepts of reasonable royalty in patent law and value of use as saved acquisition cost in copyright law, *see Sid & Marty Krofft Television Productions*, 562 F.2d at 1174 & n. 20, but the two are not identical. Reasonable royalties are used when actual damages or profits are not provable, but value of use is a form of actual damage, not a substitute to be used when no type of damage or profit can be proved. Further, the analogy between reasonable royalties and statutory damages is imperfect because statutory damages are not available only when actual damages and profits are not provable. Congress might have intended statutory damages to have the same function as reasonable royalties, and thereby have precluded the use of anything similar to reasonable royalties as a measure of actual damages in copyright cases, but the legislative reports do not say so, and neither they nor the Copyright Act defines actual damages.

Professor Nimmer notes the similarity between value of use in terms of saved acquisition costs and reasonable royalties, and states that it "has been held" that the latter is not applicable in copyright actions, and that the statutory damages provision should be invoked instead. 3 NIMMER ON COPYRIGHT § 14.02 at 14–8.2—14–9. However, only one of the cases to which Professor Nimmer cites actually holds that the reasonable royalty rule is inapplicable to copyright cases and that statutory damages are to be used instead, and even that case recognizes that reasonable royalties are used only where actual damages or profits cannot be proved. *Widenski v. Shapiro, Bernstein & Co.*, 147 F.2d 909, 911 (1st Cir.1945). *Cf. Lundberg v. Welles*, 93 F.Supp. 359, 362–63 (S.D.N.Y.1950) (rejecting *Widenski*). The contrary authority, holding that saved acquisition cost is a measure of damages or profit, *see* cases cited in text *supra*, is more numerous and (generally) more recent. ASI does not argue that these cases are incorrect.

from Deltak.[4] Since substantial liberality is shown to plaintiffs in infringement actions in their proof of damages (though not in their proof of infringement), *see Taylor v. Meirick,* 712 F.2d 1112, 1121–22 (7th Cir.1983) ("It is too much to ask a plaintiff who has proved infringement also to do the defendant's cost accounting."); *Stevens Linen Associates, Inc. v. Mastercraft Corp.,* 656 F.2d 11, 14 (2d Cir.1981); *Baldwin Cooke Co. v. Keith Clark, Inc.,* 420 F.Supp. 404, 407 (N.D.Ill.1976), this absence of evidence should cut against the infringer not against the owner. After all, we do know that ASI was willing to pay $3000 to have the infringing document produced and that it chose to undertake the infringing course with attendant risk of liability for damages rather than give up the marketing campaign.

■ The owner of a copyright is not allowed to recover its own lost sales and the infringer's profits if that results in double-counting of the same economic transaction, usually a sale to a third-party customer. *See* 17 U.S.C. § 504(b); *Taylor v. Meirick,* 712 F.2d at 1120; 3 NIMMER ON COPYRIGHT § 14.01[A] at 14–4. Similarly, Deltak cannot recover its lost sales to ASI and the value of use to ASI of the infringement, even though they are both measures of actual damages, since that would double count the same counterfactual transaction. Normally the owner recovers the larger of the two amounts, or all of one and so much of the other as is not included in the one.

*See Taylor v. Meirick,* 712 F.2d at 1120; 3 NIMMER ON COPYRIGHT § 14.01[A] at 14–4. Here, however we will not take that course. We retain lingering doubts about whether, if ASI went hat in hand to Deltak to buy fifteen copies of the Task List, Deltak would have sold any to ASI. These doubts incline us to refrain from holding the district court's finding that Deltak did not lose any sales to ASI to be clearly erroneous. Application of the value of use measure of damages, however, even when based on saved acquisition cost, does not require us to hold this finding clearly erroneous, because it is based on actual savings, not on counterfactual lost sales.[5] Therefore we will apply the value of use measure of damages.

■ It is clear that ASI received the value of use of the fifteen copies it distributed. Deltak contends that the value of use of each of these copies was $5000, the list price of the Kit. However the value of use approach requires a determination of the fair market value of the infringed document, and, while list price is evidence of fair market value, it is not conclusive. Deltak argues that by "accepting" $4925 as a reasonable estimate of its profit per Kit, and by "not quarreling" with $5000 as the price of the Kit, the district court made a finding of fact that the value of use of each kit was $5000.

We are not persuaded. The district court's remarks [6] came at the beginning of

---

4. It might be argued that ASI could have simply "borrowed" a Task List from one of the customers who had it. However, under the contracts by which the customers had purchased the Task List from Deltak, the customers had agreed not to lend their Task Lists in this way. And if ASI had used one of these borrowed Lists to manufacture its infringing copies (or bought only one copy from Deltak) it would still have been engaging in copyright infringement. Our general point is that the fact that ASI could have acted illegally in ways other than the way it did act illegally should not be used by it as a reason to defeat recovery of damages caused by the illegal way in which it did act.

5. It is for this reason that ASI's claim that it would never have negotiated to buy 15 copies at $5000, and thus there are no lost sales, is irrele-

vant. Further, a defendant infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law." *Iowa State University Research Foundation, Inc. v. American Broadcasting Cos.,* 475 F.Supp. 78, 83 (S.D.N.Y.1979).

6. The district court's remarks are as follows. Deltak presented evidence that the price of the kit (for this is the unusual type of advertising that the seller actually sells to his customers), consisting of the Task List and certain other items, is $5,000 and that Deltak's cost of producing one more such kit is $75. I accept $4,925 as a reasonable estimate of the profit per kit for a small increase in production. Deltak wants me to multiply the number by 50, the number of copies of the infringing

its rejection of the lost sales measure of damages. Since it was convinced that there were no lost sales, it did not have to consider what any lost sales were worth. We believe the district court was merely accepting these figures for purposes of argument. The parties had stipulated the list price to be $5000, so the court could hardly quarrel with that price and, as Deltak had presented evidence that the marginal production cost of the Kit was $75, $4925 might be a reasonable estimate of the profit per sale if the sales were at list price. But the district court did not apply the saved acquisition cost measure of value of use, and so had no need to distinguish between list price and average sales price or fair market value. The court did recognize that "there was much evidence that Deltak's average realized revenue from the sale of CDS kits was far less" than the $5000 list price. 574 F.Supp. at 404. Among this evidence was some which tended to show that of the 187 sales of Kits for which a price was recorded in Deltak's records and which were not "bundled" in a package with other products, the average price was $1900. Tr. at 285–86.[7]

■ Since we do not believe the district court's "acceptance" was a finding of fair market value, and discern no other finding of fair market value, we must remand for further proceedings on the issue of the fair market value of the fifteen Lists. The burden of persuasion both as to showing a fair market value less than the stipulated list price and as to showing a market value for the List separate from the Kit (or a proper allocation of values) falls, of course, on ASI. The $3000 ASI paid to its consult-

document that ASI made. But the only possible factual premise for such a measure of damages would be that Deltak would have sold 50 more copies of the CDS at $5,000 apiece had it not been for the infringement. That premise was not proved at trial and is almost certainly false. I will not quarrel with the figure of $5,000 for the sale price, though there was much evidence that Deltak's average realized revenue for the sale of CDS kits was far less.

574 F.Supp. at 404. The court then went on to determine that Deltak would not have made any sales at all but for the infringement.

ants to fabricate the document would be deductible from any award of saved acquisition costs.

The order of the district court is VACATed, and the case REMANDED for further proceedings not inconsistent with this opinion.

7. ASI's witness here refers to Defendant's Exhibit 18 as supporting this calculation. That exhibit is not in the record before us, but it would appear that Exhibit 1 to ASI's Pretrial Brief on Damages, Record Item 94, is substantially similar to it. This document, apparently based on Deltak's regularly kept business records, shows an average price of $1996 for 187 unbundled sales of the CDS Kit. ASI Pretrial Damages Br. at 3 n. *.