Susan **BRANCH**, Plaintiff,

v.

**OGILVY & MATHER, INC.
and Pepperidge Farm,
Inc., Defendants.**

**No. 89 Civ. 2440 (CHT).**

United States District Court,
S.D. New York.

Aug. 16, 1991.

Deutsch Klagsbrun & Blasband, New York City (David Blasband, Jessica R. Friedman, of counsel), for plaintiff.

Satterlee Stephens Burke & Burke, New York City (Robert M. Callagy, Jan Uhrbach, of counsel), for defendants.

## OPINION AND ORDER

TENNEY, District Judge.

On December 5, 1990, a jury found defendants Ogilvy & Mather ("O & M") and Pepperidge Farm liable for copyright infringment, but awarded plaintiff Susan Branch ("Branch") only nominal damages in the amount of $1. Plaintiff now moves for a judgment notwithstanding the verdict on the issue of damages pursuant to Fed.

Civ.Pro. 50(a)-(b). For the reasons set forth below, the motion is denied and plaintiff is awarded statutory damages in the amount of $10,000, and attorney's fees in the amount of $116,729.

## BACKGROUND

Plaintiff Susan Branch is the author and illustrator of a cookbook entitled *Heart of the Home.*[1] The cookbook is handwritten in script and contains recipes, pictures, poems, quotations, and notes to the reader. Most of the recipes are enclosed in borders, usually consisting of lines, dots, flowers, hearts, or combinations of the same. Branch possesses a certificate of copyright registration for "the entire text and illustrations" of *Heart of the Home.*

Defendant Ogilvy & Mather, Inc. ("O & M") is the advertising firm for defendant Pepperidge Farm, Inc. ("Pepperidge Farm"). In the fall of 1987, O & M decided to solicit a print advertising campaign ("print campaign")[2] for Pepperidge Farm which would emphasize Pepperidge Farm's old fashioned image. To facilitate this effort, the agent in charge of the Pepperidge Farm account, Christopher Quillen, went to a bookstore to research folk art for the campaign. He purchased *Heart of the Home* and became interested in hiring Branch to execute the illustrations for the print campaign. Subsequently, Quillen met with Branch, and offered her the opportunity to illustrate the ads contingent on Pepperidge Farm's approval. Branch accepted the offer.

Branch then executed preliminary drawings of the ads which were referred to by the parties as "comps." Although Quillen liked the comps, he could not use them because Branch had changed the Pepperidge Farm logo in one ad and had diverged from Quillen's directions in others. Since the ad presentation for Pepperidge Farm was scheduled for the next day, Quillen and O & M illustrators revised Branch's comps. In addition to using Branch's book

---

1. The facts set forth herein are adopted from the court's Opinion which granted in part and denied in part defendants' *in limine* motion. *See* Opinion and Order, 89 Civ. 2440 (CHT) (filed Nov. 23, 1990).

2. For the purposes of this Opinion, the print campaign includes both the print advertisements and the free-standing inserts (ads inserted into newspapers and magazines) listed in the Joint Pretrial Order. *See* Joint Pretrial Order ("PTO") (March 6, 1990) at 1–3.

as a reference, Quillen traced Branch's handwriting and transferred several of the book's illustrations onto the comps. When Quillen showed the revised comps to Pepperidge Farm representatives, they reacted enthusiastically and agreed that Branch should illustrate the campaign.

Instead of hiring Branch, however, O & M hired Lisa Ernst (a children's book illustrator) to execute the advertisements for the campaign. Quillen sent Ernst a copy of *Heart of the Home* and instructed her to base her handwriting on that found in the book since the layout space for the ads had already been calculated according to the dimensions of Branch's handwriting.

On April 12, 1989, plaintiff commenced this action, alleging that defendants infringed her copyright in *Heart of the Home,* diluted its trade dress, and engaged in common law unfair competition and unfair competition under the Lanham Act. *See* Complaint, 89 Civ. 2440 (LLS) ¶¶ 4, 15, 19, 23. In an Opinion and Order dated May 30, 1990, Judge Louis L. Stanton granted defendants' motion for summary judgment with respect to plaintiff's claims of unfair competition, but denied the motion with respect to the copyright and dilution claims. After the case was transferred to this court's docket on August 21, 1990, the parties agreed to dismiss the dilution claim with prejudice and without costs or attorney's fees to any party. *See* Order and Stipulation, 89 Civ. 2440 (CHT) (filed September 7, 1990). Thus, only one of the four claims in the complaint went to trial. On December 5, 1990, after a six day trial, a jury found that the defendants had infringed plaintiff's copyright, but awarded her only nominal damages of $1. Plaintiff now moves for a judgment notwithstanding the verdict pursuant to Fed.Rule Civ.Proc. 50(a)-(b).

## DISCUSSION

### A. *Jurisdiction*

The court has subject matter jurisdiction over this case pursuant to 17 U.S.C. §§ 101 *et seq.* (1982).

### B. *Judgment Notwithstanding the Verdict*

■ Judgment notwithstanding the verdict is warranted only when " 'the facts and inferences point so strongly and overwhelmingly in favor of one party,' " that no reasonable person would grant a verdict in favor of the other party. *Gehrhardt v. General Motors Corp.,* 581 F.2d 7, 14 (2d Cir.1978) (quoting *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 743 (2d Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976)). In making this determination, the court must view the evidence—without considering credibility or weight—in the light most favorable to the non-movant. *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 573 (2d Cir.), *cert. denied,* 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *see also Compton v. Luckenbach Overseas Corp.,* 425 F.2d 1130, 1132 (2d Cir.) (issues of credibility are out of place in determining judgment notwithstanding the verdict), *cert. denied,* 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970). Furthermore, juries are presumed to follow the law as instructed to them by the court. *Manufacturers Hanover Trust v. Drysdale Sec. Corp.,* 801 F.2d 13, 27 (2d Cir.1986), *cert. denied sub nom. Arthur Anderson & Co. v. Manufacturer's Hanover Trust Co.,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

### (1) Damages for Copyright Infringement

■ The 1976 Copyright Act ("the Copyright Act" or "the Act") allows a prevailing plaintiff to recover "any profits of the infringer that are attributable to the infringement...." 17 U.S.C. § 504(b).[3] The Act also provides that "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenues, and the infringer is required to prove his or her deductible expenses...." *Id.; see Abeshouse v. Ultragraphics, Inc.,* 754 F.2d 467, 470 (2d

---

**3.** This section also allows the copyright owner to recover "the actual damages suffered by him or her as a result of the infringement...." 17 U.S.C. § 504(b). In this case, however, plaintiff did not seek actual damages. *See* PTO at 6–7.

Cir.1985) (once plaintiff has established the defendant's gross profits, burden shifts to defendant to prove its deductible expenses). In order to establish that its expenses are deductible, a defendant must prove that they actually assisted in producing the infringing product. *See Wilkie v. Santly Bros., Inc.,* 139 F.2d 264, 265 (2d Cir.1943), *cert. denied,* 322 U.S. 740, 64 S.Ct. 1058, 88 L.Ed. 1574 (1944).

■ It was undisputed at trial that defendant O & M earned gross revenues in the amount of $307,500 for executing the Pepperidge Farm print campaign.[4] J. Exh. 30A; Tr. 624–25, 669.[5] The parties disagreed, however, as to which—if any—of O & M's expenses could be deducted. O & M argued that it incurred expenses in the amount of $417,785 from executing the print campaign, and thus, that the agency made no net profit from the project.[6] *See* Def. Exh. D.[7] Branch, however, maintained that O & M failed to prove with sufficient specifity that any of the expenses actually contributed to producing the infringing ads.

At the close of trial the jury was instructed as to the parties' respective burdens of proof on the issue of damages, and that any doubt as to O & M's costs must be resolved in favor of the plaintiff. *See* Tr. 870–76. The jury was also given the following instruction on nominal damages:

> [I]f you decide that defendants infringed plaintiff's copyright in the cookbook, but you are unable to fix the amount of damages with reasonable certainty based upon evidence, you should return a verdict of one dollar in favor of the plaintiff. One dollar damages are called nominal damages, and are awarded as a recognition of the fact that a plaintiff's legal rights have been violated, but that the just compensation due to plaintiff is only one dollar.

Tr. 877.

The crux of plaintiff's argument is that the jury did not follow the instructions given to it by the court. Noting several "fundamental defects" in O & M's evidence of costs, plaintiff contends that if the jury had followed the court's instructions, it would have awarded her the entire amount of O & M's gross revenues. Pl. Post-trial Brief at 8–9. However, plaintiff's objections to O & M's costs pertain solely to the weight of the evidence—a consideration which, as discussed *supra,* is improper in a motion for judgment notwithstanding the verdict.[8] Although it was undisputed that O & M earned $307,500 in gross revenues, a reasonable juror could have given full weight to the evidence of O & M's costs—which would have reduced damages to zero—thereby making nominal damages the appropriate way to recognize the infringement of plaintiff's rights. Accordingly, plaintiff's motion for judgment notwithstanding the verdict is denied.

### C. *Statutory Damages*

The Copyright Act provides that

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory dam-

---

**4.** Plaintiff sought to recover only the profits of O & M. *See* Letter from Deutsch, Klagsbrun & Blasband (July 3, 1991) (docketed July 8, 1991).

**5.** Citations using "J. Exh." and "Tr." refer, respectively, to joint trial exhibits and the trial transcript.

**6.** O & M divided its expenses into two categories—direct costs and overhead. Direct costs consisted of salaries, pensions, and benefits paid to O & M employees who worked on the Pepperidge Farm account, while overhead consisted of the cost of maintaining its business that were not associated with a particular client's account, such as rent, telephone, office supplies, insurance, and legal fees. *See* Tr. 616–17. The par-

ticular percentage of overhead in any given year is reached by subtracting the costs associated with a specific account from the total cost of running the agency, and then dividing that difference by O & M's salary costs. *Id.* 620.

**7.** Citations using "Def. Exh." refer to Defendants' trial exhibits.

**8.** Plaintiff also disputes the admissibility of the documents offered to show O & M's expenses. *See* Pl. Post-trial Brief at 5–6 (arguing that Def. Exhs. D, E were "incompetent evidence"). As the court ruled at trial, these documents were competent evidence, and any objection to them goes to their weight rather than their admissibility. *See* Tr. 619–20.

ages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $250 or more than $10,000 as the court considers just.[9] 17 U.S.C. § 504(c)(1). Plaintiff has chosen to elect statutory damages if the court decides to deny her motion for judgment notwithstanding the verdict. *See* Pl. Post-trial Brief at 12.

■ The amount of statutory damages depends in large part on whether the infringement was innocent or willful. 17 U.S.C. 504(c)(1)–(2). If defendant's infringement was willful, the court may in its discretion increase the award beyond the statutory maximum; if, on the other hand, defendant's infringement was innocent, the court may reduce the award to an amount below the statutory minimum.[10] Furthermore, where two or more defendants contributed to the infringement, they are all jointly and severally liable for the award of statutory damages. *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1116–17 (2d Cir.1986) (two intentional infringers); *Warner Bros. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740, 769–770 (S.D.N.Y.1988) (two innocent infringers), *rev'd on other grounds*, 877 F.2d 1120 (2d Cir.1989).

■ This circuit has defined "willfulness" in the context of § 504 as a defendant's actual or constructive knowledge "that its actions constitute an infringement." *Fitzgerald*, 807 F.2d at 1115. Thus, in order to prove willfulness, a plaintiff must show that the defendant knew or should have known that its conduct constituted copyright infringement. Similarly, in order to establish innocent intent, the defendant must prove that it did not know and should not have known that its conduct constituted infringement. *Id.* One defense to an allegation of willfulness is the defendant's reasonable and good faith belief that its actions do not constitute copyright infringement. *See* Nimmer on Copyright § 14.40[B][3]; *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1544 (S.D.N.Y.1991). Thus, even if defendant continues to infringe after having been notified of its allegedly illegal actions, the infringement is not necessarily intentional. *See* Nimmer on Copyright § 14.-04[B][3]; *Wow & Flutter Music v. Len's Tom Jones Tavern, Inc.*, 606 F.Supp. 554, 556 (W.D.N.Y.1985).

■ Here, plaintiff maintains that she has sustained her burden of proving intentional infringement, and yet defendant O & M contends that it has proven innocent infringement.[11] *See* Pl. Post-trial Brief at 14–21; Def. Post-trial Brief at 10–27. In support of her argument, plaintiff cites the following facts: (1) O & M was on notice that Branch claimed exclusive rights in her work; (2) Christopher Quillen—the senior creative director of the print campaign—gave copies to O & M's artists and instructed them to copy the "look" of the book; (3) although Quillen asked Branch for permission to cut out certain illustrations from the comps she had prepared, no one from O & M asked permission to copy the "look" of her book; (4) Quillen possesses a high level of expertise in the field of commercial art, including substantial experience in purchas-

---

**9.** The Berne Convention Implementation Act ("Berne" or "Berne Convention") doubled the Act's minimum and maximum amounts of statutory damages, but did not become effective until March 1, 1989. *See* Nimmer on Copyright § 14.04[B][1]. In this case, the first four ads were published before Berne took effect and the remaining five were published after Berne. *See* Blasband Affidavit in Support of Plaintiff's Motion for Attorney's Fees ("Blasband Aff. in Support") (sworn to Dec. 24, 1990) ¶¶ 64–66. However, because plaintiff concedes that each separate adaptation of her work does not constitute a separate infringement, she requests a single award for all the ads published by the defendants. *See* Pl. Post-trial Brief at 13. Thus, since

defendants' infringement commenced before Berne became effective, the pre-Berne statutory damages apply.

**10.** In the case of intentional infringements, the court may increase the statutory maximum to $50,000, and in the case of innocent infringements, the court may reduce the statutory minimum to $100. *See* 17 U.S.C. § 504(c)(2).

**11.** Because there is no dispute that Pepperidge Farm's infringement was innocent, the court will refer only to O & M in its discussion of intentional infringement. *See* Tr. 791, 798.

ing rights over copyrighted works; and (5) even after plaintiff filed her complaint, defendants continued to publish infringing ads. *See* Pl. Post-trial Brief at 14–20.

Although these facts are not in dispute, they do not sufficiently show that O & M knew or should have known that its copying constituted copyright infringement. O & M has established that it held a reasonable and good faith belief that its actions did not infringe plaintiff copyright. After plaintiff notified defendants of the infringement, O & M—relying on the advice of its legal counsel—maintained that their actions did not violate any of plaintiff's rights in her work. *See* Callagy Affidavit ¶ 3 & Exh. B (sworn to Dec. 26, 1990) (letter from O & M's prior counsel to plaintiff, stating that "we do not believe "that there has been the violation claimed in your letter of Ms. Branch's rights under the trademark and copyright laws"). Although O & M continued to publish the infringing ads after plaintiff commenced her lawsuit, the agency ceased its infringing conduct when Judge Stanton decided that plaintiff had a protectible interest in the "look and feel" of her work. Thus, the court cannot conclude that O & M knew or should have known that its actions in executing the ad campaign violated Branch's copyright, and accordingly, finds that both defendants were innocent infringers.

 The court, however, declines to reduce the damage award to an amount below the statutory minimum. In arguing for the reduction, defendants rely heavily on the contention that plaintiff's theory of liability was novel, and thus, defendants' did not know, nor should not have known, that her theory would prevail in court. Defendants also point out, however, that at the time of the infringement, plaintiff had not articulated her theory of liability as being "total look and feel." Thus, whether that theory of liability is novel is irrelevant to defendants' state of mind at the time of the infringements. Furthermore, given the fact that Christopher Quillen was a senior creative director with ten years' experience in commercial art—some of which involved purchasing the right to use copyrighted

works—the court concludes that the statutory minimum should not be reduced in this case.

In addition to intent, courts consider other factors in awarding statutory damages such as the fair market value of the rights infringed, the revenue lost by the plaintiff and profits gained by the defendant, and deterrence of future infringement. *Fitzgerald*, 807 F.2d at 1117. Here, the fair market value of plaintiff's labor was at least $3,000 per ad. *See* Callagy Affadavit ¶ 3 (sworn to Jan. 9, 1991); Blasband Reply Affadavit ¶ 7 (sworn to Jan. 4, 1991). Thus, if Branch had executed all nine ads, she would have received at least $27,000. As discussed *supra*, however, plaintiff did not sustain any actual damages, and O & M made little or no profit on the ad campaign. The court therefore concludes that plaintiff should receive the maximum amount of statutory damages applicable to non-intentional infringers. Accordingly, the defendants are jointly and severally liable to plaintiff for $10,000 in statutory damages.

### D. Attorneys' Fees

Section 505 of the Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party ... [and] may also award a reasonable attorney's fee to the prevailing party as a part of the costs." 17 U.S.C. § 505. Although discretionary, awarding attorney's fees is the rule rather than the exception. *Micromanipulator Co. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985). Attorney's fees are awarded in order to assure equal access to the courts, to provide an economic incentive to challenge infringements, and to penalize the losing party. *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir.1983) (citing *Quinto v. Legal Times of Washington, Inc.*, 511 F.Supp. 579, 581 (D.D.C.1981)). Thus, because the purposes of Section 505 are to encourage the assertion of colorable copyright claims and to deter infringement, prevailing plaintiffs usually recover their fees. *See Diamond v. Am–Law Publishing Corp.*, 745 F.2d 142, 148 (2d Cir.1984). In this case, the court finds that an award of attorney's fees is appropriate.

### (1) "Prevailing Party"

■ A party who succeeds on a claim of copyright infringement is a "prevailing party" under the Act, even if that party did not succeed on its other claims. *See B & B Auto Supply, Inc. v. Plesser,* 205 F.Supp. 36 (S.D.N.Y.1962) (plaintiff was prevailing party even though unfair competition claim was dismissed). Furthermore, an award of nominal damages does not preclude the plaintiff from being the prevailing party. *See Shapiro, Bernstein & Co. v. 4636 S. Vermont Ave., Inc.,* 367 F.2d 236, 243 (9th Cir.1966) (but for local rule regarding settlement in Southern District of California, plaintiff who established copyright infringement was prevailing party).

■ Defendants assert that because plaintiff was unsuccessful on three out of the four counts alleged in her complaint, she is not the prevailing party.[12] *See Def. Post-trial Brief at 32.* However, the fact that plaintiff was unsuccessful on her other claims is irrelevant to determining whether she is a prevailing party under the Copyright Act.[13] Contrary to defendants' assertion, plaintiff successfully established copyright infringement, and is therefore the prevailing party under the Act.[14]

### (2) Amount of the Award

■ An award for attorney's fees should reflect the time that was reasonably necessary to successfully prosecute the copyright claims, including any time spent responding to motions or other actions by the adverse party. *See Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.,* 886 F.2d 1545, 1557 (9th Cir.1989) (1909 Act), *cert. denied,* —— U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990). In determining the exact amount of the award, five factors are taken into consideration: (1) the amount of work necessary, (2) the amount of work done, (3) the skill employed, (4) the monetary amount involved, and (5) the result achieved. Nimmer on Copyright § 14.-10[C].

In this case, only the first and second considerations require discussion—i.e., the amount of work necessary and the amount actually performed.[15] Plaintiff seeks reimbursement for all of the work performed on her entire case—an amount totalling $233,458. The court, however, finds that this sum is excessive. Because plaintiff prevailed on only one of the four claims alleged in her complaint, the award should not include the work corresponding to her unsuccessful claims.[16] In addition, plaintiff offered into evidence less than half of the exhibits that she designated on the

---

**12.** Defendants rely heavily on *Warner Bros. v. Dae Rim Trading,* 677 F.Supp. 740, 773 (S.D.N.Y.1988), *rev'd on other grounds,* 877 F.2d 1120 (2d Cir.1989), a case in which the court found that plaintiff was not the prevailing party. The *Warner* court, however, based its decision on the fact that the plaintiff commenced the action for "oppressive" reasons, and conducted it in a "vexatious" and "unreasonable" manner. *See id.* 771–73. Because such a scenario is not present in this case, *Warner* is inapposite.

**13.** Defendants contend that "plaintiff succeeded on only a small portion of her copyright claim" because the copyright count articulated in her complaint was vague and because she ultimately abandoned her claim that the individual elements of her book were copyrightable. Def. Post-trial Brief at 32–35. Even if this were true, the fact is that the jury found the defendants liable for copyright infringement, thereby making plaintiff the prevailing party on that claim.

**14.** Defendants also argue that plaintiff should not be awarded attorney's fees because she un-

reasonably rejected defendants' offers of settlement. *See* Callagy Aff. (Dec. 26, 1990) ¶ 11; Callagy Aff. (Jan. 9, 1991) ¶¶ 3–4. However, refusing a settlement offer does not preclude an award of attorney's fees. *Quinto v. Legal Times of Washington, Inc.,* 511 F.Supp. 579, 582 (D.D.C.1981). Furthermore, the court cannot fairly conclude that in this case, plaintiff's refusals of defendants' offers were unreasonable.

**15.** The other factors will not affect the award in this case: plaintiff's attorneys have substantial experience in the area of intellectual property, Blasband Affidavit in Support ¶¶ 1–5; plaintiff will recover a substantial amount in damages as a result of this Opinion; and plaintiff's attorneys achieved a favorable result for their client.

**16.** Plaintiff argues that because all the claims arose from a "common core of facts," the three non-copyright claims did not require additional discovery. Even if this were true, however, the other three claims did require additional research and briefing for which the defendants should not have to pay.

Joint Pre-trial Order, and the testimony of one of plaintiff's witnesses, Adam Hanft, was excluded by the court as irrelevant. The court finds, therefore, that an equitable award of attorney's fees in this case is half of plaintiff's request.[17] Accordingly, defendants are liable to plaintiff for attorney's fees in the amount of $116,729.[18]

## CONCLUSION

Plaintiff's motion for judgment notwithstanding the verdict is denied. Defendants are jointly and severally liable to plaintiff for statutory damages in the amount of $10,000, and for attorney's fees in the amount of $116,729. The clerk of the court is directed to enter judgment in conformity herewith.

So ordered.

---

**17.** Although plaintiff prevailed on only one of the four counts alleged in her complaint, it would be unfair to award her only one-fourth of the requested fees. Since copyright infringement was the most extensive of the four claims, the court finds that it occupied more than one-fourth of the total time spent on the case.

**18.** This amount does not include the costs taxable against the losing party pursuant to Standing Order M–10–468 (S.D.N.Y., April 20, 1990).