**PAR MICROSYSTEMS, INC., Plaintiff,**

v.

**PINNACLE DEVELOPMENT CORPORATION, et al., Defendants.**

**No. CIV. A. 3:93–CV–2114–D.**

United States District Court, N.D. Texas, Dallas Division.

March 11, 1998.

Jon L. Roberts, Arter & Hadden, Washington, DC, Charles Imlay Appler, Bennett & Weton, Dallas, TX, Tobey B. Marzouk, Marzouk & Parry, Washington, DC, for PAR Microsystems, Inc.

Jay "Jeff" Francis Whittle, Jr., Law Office of Jeff Whittle, Arlington, TX, for Pinnacle Development Corp.

Craig William Weinlein, Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, for Data Nat. Corp.

### *MEMORANDUM OPINION AND ORDER*

FITZWATER, District Judge.

In this copyright infringement action, the jury found that the corporate defendant was liable for infringement and found its officer was not liable for contributory infringement. On post-judgment motions, the court concludes that plaintiff failed to introduce evidence that would have permitted a reasonable jury to find that the defendant's infringement caused the plaintiff's damages. The court therefore amends its judgment and enters judgment in favor of both defendants. Following review of additional submissions, the court declines to award attorney's fees and expenses to any of the parties.

I

Plaintiff PAR Microsystems, Inc. ("PAR") sued defendants Pinnacle Development Corporation ("Pinnacle") and Robert S. Johnson ("Johnson"), contending that they were liable for infringing PAR's copyrights in computer software programs known as the A–Line Network Manager and CMAX (a derivative work), which were used in the food service industry. Following a trial, the jury found Pinnacle liable for infringing the copyrights, and awarded PAR $100,000 in actual dam-

ages based on lost profits. The jury found that Johnson was not liable for contributory infringement as an employee and officer of Pinnacle. Following entry of judgment on the verdict, Pinnacle filed a renewed motion for judgment as a matter of law or, alternatively, for new trial or, alternatively, to alter or amend the judgment. Johnson also moved to alter or amend the judgment. PAR applied for an award of attorney's fees and expenses. On December 30, 1997 the court filed a memorandum opinion and order in which it granted Johnson's motion, denied Pinnacle's motion for a new trial,[1] and denied in part and deferred in part Pinnacle's renewed motion for judgment as a matter of law and motion to alter or amend the judgment. 995 F.Supp. 655. The court also deferred a ruling on PAR's fee application.

One of the grounds for Pinnacle's post-judgment motions is that PAR is not entitled to recover lost profits because it failed to establish causation or to adduce evidence that supports the amount of damages awarded. In its December 30 opinion, the court rejected Pinnacle's arguments because they were based on Texas, not federal copyright, law. It directed Pinnacle to file a supplemental brief that analyzes the evidence under the causation and amount of damage standards applied in copyright infringement actions. *Id.* at 657. The court indicated that it would decide the remaining portions of Pinnacle's renewed motion for judgment as a matter of law and motion to alter or amend the judgment after considering this briefing. *Id.* at 657–658. The parties have now briefed the issue under the correct standards, and the court proceeds to decide the question presented.

## II

Pinnacle argues on several grounds that it is entitled to judgment as a matter of law or to alter or amend the judgment. The court need only consider its contention that PAR

failed to prove that Pinnacle's infringement caused PAR to suffer actual damages.[2]

## A

■ A plaintiff in a copyright infringement case "bears the burden of proving that the infringement was the cause of its loss of revenue." *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147, 1170 (1st Cir.1994). "[T]he plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." *Id.* at 1171. "The plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." *Id.* (citing *Big Seven Music Corp. v. Lennon,* 554 F.2d 504, 509 (2d Cir. 1977) ("[D]amages may be recovered only if there is a necessary, immediate and direct causal connection between the wrongdoing and the damages.")).

■ A party who seeks judgment as a matter of law under Rule 50(b) must establish that " 'there is no legally sufficient evidentiary basis for a reasonable jury' " to find in favor of the nonmovant. *See Burch v. Coca–Cola Co.,* 119 F.3d 305, 313 (5th Cir. 1997) (quoting Fed.R.Civ.P. 50(a)(1)), *cert. denied,* —— U.S. ——, 118 S.Ct. 871, 139 L.Ed.2d 768 (1998). The court must "view the entire trial record in the light most favorable to the non-movant, drawing reasonable factual inferences in its favor." *Id.* The court cannot grant the motion unless the " 'facts and inferences point so strongly and overwhelmingly in favor of the moving party ... that reasonable jurors could not have arrived at a contrary verdict.' " *Id.* (quoting *RTC v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993))

---

1. In light of the court's decision today, it must revisit this ruling. *See* Fed.R.Civ.P. 50(c)(1) (providing that if renewed motion for judgment as a matter of law is granted, court must also rule on motion for new trial). The court therefore conditionally grants Pinnacle's motion for new trial on the ground that PAR failed to prove that the lost profits awarded by the jury were caused by Pinnacle's infringement. The court

conditionally denies the motion for new trial insofar as based on Pinnacle's assertion that it did not infringe PAR's copyrights.

2. Pinnacle maintains that it did not infringe PAR's copyrights. The court has already held in the December 30 opinion that PAR proved infringement. *See id.* at 657.

(citing *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc)).

## B

■ PAR sought to prove its actual damages under 17 U.S.C. § 504(b) based on lost profits.[3] According to the trial evidence, in 1989 and 1990 PAR marketed and distributed CMAX software under a license with Data National Corporation ("DNC"). *See* PAR (Jan. 23, 1998) Rep. Br. at 3. CMAX consisted of software developed in part by PAR and· its predecessors and in part obtained through a license from DNC. *Id.* In February or March 1991, however, DNC unilaterally terminated PAR's right to market CMAX and granted the right to Pinnacle. *See id.* at 4; Testimony of Mary Beth Lockwood–Eng ("Lockwood–Eng"), Tr. 2B:5. Pinnacle marketed a product, Oasis,[4] that contained thousands of lines of program code taken from A–Line Network Manager and CMAX. PAR alleged that Pinnacle's copyright infringement caused it to sustain actual damages. PAR calculated these damages by measuring lost profits based on the sales that it contends it would have made of the CMAX product had it been able to sell the product to some of its existing customers. Testimony of Lockwood–Eng, Tr. 2B:10–18. It attempted to persuade the jury that it had or would incur $2.2 million in lost profits through the year 2000. *See* PX 27.

Pinnacle maintains that PAR failed to establish that any lost sales were caused by Pinnacle's infringing conduct. *See* Pinnacle (Oct. 24, 1997) Br. at 4 (arguing that PAR offered no evidence that its damages were caused by Pinnacle's purported infringement); Pinnacle (Jan. 8, 1998) Supp. Br. at 2 (asserting that PAR's evidence was based on sales of a product it did not have); 3 (pointing out that after DNC license ended, PAR was not entitled to continue marketing CMAX and did not develop product comparable to Oasis); and 6 (asserting that PAR had no product comparable to Oasis, did not develop a comparable product, and did not sell Oasis as a licensee). The court agrees with Pinnacle.

PAR's theory of damages is based on the time period after DNC terminated PAR's right to sell CMAX, which occurred in February or March 1991.[5] PAR introduced evidence for the purpose of showing that had Pinnacle not infringed PAR's copyrights, PAR could have sold CMAX and obtained revenues from store and host licensing fees, training fees, and continuing support fees. *See* PX 161. The fundamental defect with this theory of causation is that PAR no longer had the rights from DNC to sell CMAX, and did not have a product of its own to sell or to license to its customers. PAR marketed the CMAX product under a license from DNC. Once DNC terminated PAR's rights, it could no longer market CMAX, and lacked a substitute product of its own.

PAR acknowledges that it had three options once it lost the DNC license: distribute Pinnacle's Oasis software, which infringed PAR's copyright; develop its own software product, which could take up to two years to introduce into the market; or begin a relationship with a third party that had existing

---

3. This is an acceptable approach. *See, e.g., Data Gen.*, 36 F.3d at 1170 (holding that actual damages are "often measured by the profits lost as a result of the infringement"); *Jarvis v. A & M Records*, 827 F.Supp. 282, 293 (D.N.J.1993) (noting that actual damages "are often defined to equal the profits which plaintiff would have accrued but for the defendant's infringement"); *Manufacturers Techs., Inc. v. Cams, Inc.*, 728 F.Supp. 75, 80 (D.Conn.1989) (holding that Copyright Act does not define actual damages, that it has been interpreted to mean the extent to which the market value of the copyrighted work has been injured or destroyed as a result of and during the time of the infringement, and that one method of proving injury to market value is by establishing the profits that the plaintiff would have accrued but for defendant's infringement).

4. The evidence showed that Pinnacle marketed Oasis 2.0, Oasis 2.99, and Oasis 3.12. For clarity, the court refers collectively to these products as "Oasis."

5. In the pretrial order, PAR alleged that it sought lost profits of $1.56 million for the period January 1, 1991 through September 30, 1997. *See* PTO at 2. Lockwood–Eng testified that DNC terminated the license in February or March 1991. Tr. 2B:5. PAR did not contend at trial that it lost at least $100,000 in profits caused by Pinnacle's infringement during January or February of 1991. *Cf.* PX 27 (claiming $189,000 in lost profits for all of 1991). There is no basis in the record to support the jury's award based on the portion of 1991 that preceded DNC's termination of the license.

software that could meet the needs of PAR's customers. PAR (Jan. 23, 1998) Rep. Br. at 4.[6] PAR argues that it is ludicrous to suggest that after DNC terminated PAR's right to sell CMAX, PAR should have entered into an arrangement with Pinnacle (the infringer of PAR's copyrights) to distribute Oasis. *Id.* at 5. PAR asserts that this step was not required in order to mitigate damages, *id.* at 5 n. 1, and that had it taken such action and actively distributed Oasis, this would merely have served to increase substantially the damages that Pinnacle owed PAR. *Id.* at 5.

PAR's reasoning fails to address the pertinent causation question. Even if PAR had no obligation to obtain a license from an infringer, the fact remains that, without a license or a product of its own, PAR had no product to sell and did not lose any sales due to Pinnacle's infringement. PAR's trial proof is insufficient to allow a reasonable jury to find causation because PAR's inability to sell its copyrighted software was not caused in fact by Pinnacle's infringement. PAR did not demonstrate a reasonable probability that, but for Pinnacle's infringement, PAR would not have suffered the losses. Pinnacle's infringement was not the proximate cause of the lost sales that were the subject of PAR's trial evidence.[7]

PAR argues that "because Pinnacle's Oasis software product infringed PAR's copyright in PAR's A–Line Network Manager code (and PAR refused to do business with an infringer), PAR had no product with similar functionality to offer prospective customers and, consequently, suffered the damages discussed.... Stated differently, but for the Oasis code infringing PAR's copyrights, PAR would have marketed the Oasis code and not suffered actual damages." *Id.* at 7. The evidence does not support this assertion. PAR

had no product to market because it did not have a license and did not have its own product. PAR would not have marketed the "Oasis code" except as part of CMAX (which it no longer had a license to market) or as part of its own product (which would have taken two years to develop). Pinnacle's infringing activities did not cause PAR to lose sales of its copyrighted software—the loss of the license for CMAX and the absence of a substitute product did.

The court therefore holds, based on the trial evidence, that a reasonable jury could only have found that Pinnacle's infringement did not cause PAR to suffer the lost profits that the jury awarded.[8]

### C

Section 504(b) of the Copyright Act also provides that a copyright owner is entitled to recover any profits of the infringer that are attributable to the infringement and that are not taken into account in computation of actual damages. PAR contends that the jury could have determined damages based on Pinnacle's profits. PAR (Jan. 23, 1998) Rep. Br. at 12–13. Indeed, in the court's view, under the particular facts of this case— where PAR had no product and Pinnacle's product infringed PAR's copyrights—this is the most logical way of measuring PAR's damages.

There is an insuperable bar, however, to PAR's contention: PAR did not seek damages on this basis. *See* PAR Proposed Jury Instructions at 28–32 (addressing PAR's lost profits, not Pinnacle's profits). Consequently, the court did not submit a damages question to the jury that used this measure of damages. *See* Ct. Chg. at 12–13 (addressing

---

**6.** PAR does not contend that the relationship with a third party that had software that could meet the needs of its customers would have involved the use of PAR's copyrights.

**7.** Nor is it determinative that Johnson, while still a PAR employee, licensed his infringing product to DNC, who sublicensed it back to PAR. This simply shifts the recoverable damages to Pinnacle's profits, which PAR did not seek during trial.

**8.** The following analogy is illustrative. Assume that PAR and DNC each provided copyrighted material for a book, entitled "Book A," which

DNC licensed PAR to sell. DNC then opted not to renew PAR's license. Pinnacle began selling a book, entitled "Book B," which infringed PAR's copyright. But PAR no longer had a license to sell Book A, and (for various reasons) could not get a book of its own on the market to compete with Book B. Pinnacle's sale of the infringing book, Book B, was not the cause-in-fact of PAR's lost profits stemming from its inability to sell Book A or another book that contained its copyrighted material. The loss of the license, and the inability to develop a substitute product, caused the loss.

PAR's lost profits from sales that PAR would have made). As Pinnacle points out, PAR "did not even submit to the Court a proposed instruction advising the jury of this damage calculation method. No such instruction appeared in the Court's Charge, and PAR made no objection to the omission of that instruction." Pinnacle (Jan. 8, 1998) Supp. Br. at 10. The court holds that PAR cannot recover Pinnacle's profits pursuant to this component of § 504(b) because the jury verdict was not based on this measure of damages and PAR failed to request findings using this measure.

### D

Absent § 504(b) actual damages and lost profits, the court now addresses whether § 504(c) statutory, or nominal damages, are available to PAR.

■ Statutory damages cannot be awarded under the facts of this case because PAR registered the copyrights after the development and marketing of the infringing product. In these circumstances, statutory damages are not recoverable. *See Mason v. Montgomery Data, Inc.,* 967 F.2d 135, 144 (5th Cir.1992). In fact, PAR does not appear to request statutory damages.

■ Nor are nominal damages available. The court raised the question of nominal damages in its December 30 opinion, although neither party had done so, because it wanted to have before it all possible grounds on which damages could be awarded, thereby avoiding additional briefing if it vacated the jury damage verdict. PAR maintains that if for any reason the court holds that it cannot otherwise recover the amount of damages awarded by the jury, the court should uphold the $100,000 award as nominal damages.

The court has located scant authority that holds that nominal damages are awardable under the Copyright Act. In *Branch v. Ogilvy & Mather, Inc.,* 1991 WL 254425 (S.D.N.Y. Nov.15, 1991) (denying reargument), the case the court cited in its December 30 opinion, the court instructed the jury that it could award nominal damages if it could not fix the amount of damages with reasonable certainty. *Branch v. Ogilvy & Mather, Inc.,* 772 F.Supp. 1359, 1363 (S.D.N.Y.1991). When the jury returned a verdict for nominal damages of $1.00, however, the court awarded statutory damages in the amount of $10,000 based on the plaintiff's election of such an award. *Id.* at 1364, 1367.

The court has not located any other case that squarely addresses the awardability of nominal damages for copyright infringement. In view of the carefully defined scheme established in § 504(b) and (c), it is doubtful that Congress left room for such an award when it otherwise provided ample remedies for infringement. In any event, PAR has not shown that it is entitled to recover "nominal" damages in the sum of $100,000.

### III

■ The court in its December 30 opinion granted defendant Johnson's motion to alter or amend the judgment, concluding that he is entitled pursuant to § 505 to recover attorney's fees as a prevailing party. The court left the determination of the amount of the award to supplemental submissions. Johnson moves for an award in the amount of $134,508.93. PAR contests some components of Johnson's fee application, but its primary argument is that Johnson should recover but a fraction, if anything, of the amount he seeks. It also points out that the fees that Johnson (Pinnacle's president and 51% shareholder) incurred have been paid by Pinnacle.

Having considered Johnson's application, and analyzed it under *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994), the court concludes that Johnson should not recover any fees and expenses. The court therefore denies his motion to alter or amend the judgment. Two important facts that were not clear to the court at the time it filed its December 30 opinion are now apparent: First, Pinnacle has paid all of Johnson's fees, and he intends to remit to Pinnacle any amount that the court awards him. Johnson Feb. 9, 1998 Aff. at ¶¶ 3 & 4. Second, the fees that Pinnacle and Johnson incurred "are essentially incapable of precise segregation by claim or party ." Johnson (Feb. 9, 1998) Rep. Br. at 5. This means the court is unable to render an award that compensates Johnson for the personal expenses that he incurred without as-

signing what is essentially an arbitrary amount. And any portion of the award that exceeds what reasonably should go to Johnson for his expenses will inure to the benefit of Pinnacle, who the court has determined *infra* should receive no award.

Moreover, addressing the nonexclusive factors set out in *Fogerty,* 510 U.S. at 534 n. 19, the court declines to award Johnson any fees because PAR's action against him was not frivolous or improperly motivated; it was objectively reasonable legally and factually (in light of evidence that Johnson surreptitiously provided copyrighted code to DNC); and, in view of Pinnacle's arrangement to pay Johnson's expenses and his ownership position, there are no persuasive considerations of compensation. Nor is there a deterrence factor that supports a fee award.

### IV

█ Although, as a result of this decision, Pinnacle is now a prevailing party, the court holds that it would be unjust to award Pinnacle its attorney's fees where the jury found that it had infringed PAR's copyrights. The court therefore declines in its discretion to make such an award.

\*   \*   \*   \*   \*   \*

The court grants Pinnacle's renewed motion for judgment as a matter of law and its alternative motion to alter or amend the judgment as set forth in this opinion; conditionally grants in part and denies in part its motion for new trial; and denies Johnson's motion to alter or amend the judgment. PAR's application for attorney's fees and expenses is denied. The court has entered an amended judgment today in accordance with the court's December 30 opinion and this opinion.

**SO ORDERED.**