**OCEAN ATLANTIC WOODLAND CORPORATION, a Virginia corporation, Plaintiff,**

v.

**DRH CAMBRIDGE HOMES, INC., a California corporation, Cowhey Gundmundson, Leder, Ltd. an Illinois corporation, and Pugsley & Lahaie, Ltd., an Illinois corporation, Defendants.**

No. 02 C 2523.

United States District Court, N.D. Illinois, Eastern Division.

May 16, 2003.

on the ultimate merits of Bontkowski's § 2255 motion.

Andrew Hansell, Gardner, Carton & Douglas, Chicago, IL, for Plaintiff.

Terence H. Campbell, Cotsirilos, Tighe & Streiker, Chicago, IL, Keith W. Medansky, Piper, Marbury, Rudnick & Wolfe, Chicago, IL, Jenee M. Szczap, Wildman, Harrold, Allen & Dixon, Lisle, IL, for Defendants.

### *MEMORANDUM ORDER*

GUZMAN, District Judge.

Before the court is DEFENDANTS' JOINT MOTION FOR A PROTECTIVE ORDER, BIFURCATION OF DISCOVERY, AND FOR OTHER RELIEF.[1] Also before the court are two motions filed by plaintiff namely: OCEAN ATLANTIC WOODLAND CORPORATION'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS FROM DRH CAMBRIDGE HOMES, INC. AND PUGSLEY & LAHAIE, LTD. and OCEAN ATLANTIC WOODLAND CORPORATION'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND PRODUCTION FROM COWHEY, GUNDMUNDSON, LEDER, LTD. On December 20,-

---

1. On December 20,2002, that part of the motion relating to bifurcation of discovery was denied. At that time plaintiff's motion to extend discovery was also denied.

2002, the motions were granted in part and denied in part and the parties were requested to file a detailed order setting forth the rulings on specific parts of the contested discovery. The parties, after protracted negotiations, were not able to agree on the content of the order. We now issue our detailed order.

## I. *BACKGROUND*

This court has described in detail the facts of this case in our September 25, 2002 Report and Recommendation submitted to Judge Guzman. We will thus limit our description to those facts necessary to understand the basis for our rulings which resolves the discovery disputes.

Ocean Atlantic Woodland Corporation ("Ocean Atlantic"), through recent purchase on April 9, 2002, acquired copyright ownership in two development plans made specifically for a parcel of land (known as the "Liberty Grove" development) in the Village of Plainfield.[2] The Plans are part of an annexation agreement governing the village's incorporation of that parcel of land and are based on the contours of the land to be developed. It is worth noting that although the Development Plans were adopted by the Village, Ocean Atlantic does not have any rights to develop the land under the plans due to its failure to close on the sale of the land on time. *See*

*Elda Arnhold and Byzantio v. Ocean Atlantic Woodland Corp.*, 284 F.3d 693 (7th Cir.2002). Ocean Atlantic now pursues a claim of copyright infringement against DRH Cambridge Homes, Inc. ("Cambridge"), the developer who finally acquired the rights to develop the parcel, and is developing the land, in accordance with the subject copyrighted Plan adopted in the annexation plan and incorporated by the Village. Also joined in this suit as defendants are the firms that provided engineering services and landscaping architecture services at the development site.[3]

Ocean Atlantic seeks massive document production involving all aspects of Cambridge's financial activities, including costs, sales, and profits on all its developments and all of its home sales throughout the country since 1997. Significantly, Ocean Atlantic's requests are not limited to business activities at the development site at issue, nor to the time period at issue. This same discovery approach—albeit to a lesser degree—was made upon the other two defendants. The document production Ocean Atlantic seeks—ostensibly to identify damages-is extraordinarily broad in scope. To fully get the flavor of this, one need only peruse the directions Ocean Atlantic gave to the defendants as to what documents are to be produced.[4] Because

---

**2.** The development plans have been referred to in this discovery dispute as Exhibit B— "Preliminary Plat" and Exhibit B–1 "Preliminary Landscape plan"; to keep matters simple we will call them the "Development Plans" or "Plans."

**3.** Defendant, Pugsley & LaHaie, Ltd. ("Pugsley") is the firm involved in landscape architecture activities at the Liberty Grove site. Defendant Cowhey Gundmundson, Leder, Ltd. ("Cowhey") is the firm providing engineering services at the Liberty Grove site.

**4.** While each defendant received identical instructions, we look to those served upon Cambridge as an example:

DEFINITIONS
I. As used herein "Cambridge" refers to DRH Cambridge Homes, Inc., a homebuilder and developer, located at 800 South Milwaukee Avenue, Suite 250, Libertyville, Illinois 60048. Reference to Cambridge herein should be understood as including such party's parents, subsidiaries of parents, subsidiaries, and all divisions, affiliates, predecessors and successors and assigns of each of the foregoing, and all of its agents, officers, directors employees, representatives, consultants, and attorneys.
II. The term "documents" shall have the same meaning as set forth in Rule 34 of the Federal Rules of Civil Procedure, and includes, without limitation, the original (and

Ocean Atlantic's discovery requests range far beyond the development site involved in this case, and encompass a time period five years prior to its copyright acquisition, we find grave difficulty with them.

## II. *DISCUSSION*

### A. *Discovery of Defendants' Business Activities Outside and Apart From the Liberty Grove Site Under the Village's Annexation Plan*

■ Rather than limit its discovery requests to the development site at issue, the site being developed under the copyrighted plan, Ocean Atlantic's interrogatories and production requests seek all of the defendants' financial records relating to their entire business and professional activities, on all construction projects throughout the country, beginning from 1997 through present date. Included within these interrogatories and production requests are demands for the production of customer identification and communications, adver-

tising plans, and costs, sales data, cost of development, payments and profits among the defendants, and filings with government agencies. It can be said, essentially, that Ocean Atlantic is seeking every single business and management record of defendants for all their construction and development activities, no matter where and when done, beginning from 1997 to present date. Obviously, the physical production of these documents would number in the hundreds of thousands of pages and would involve an extraordinary costly undertaking for the defendants. This court first asks then—can anything remotely relevant to the claims and defenses—or more pointedly to damages—arising from use of the Development Plans at the Liberty Grove development site justify this massive body of discovery? We hardly think so.

■ Discovery under Fed.R.Civ.P. 26(b) is not without limits; the manner and scope of discovery must be tailored to some extent to avoid harassment or being

every copy of the original that differs in any way from it) of any written, recorded or graphic matter or any medium of any type or description upon which intelligence or information is recorded or from which intelligence or information can be recorded, which is or has been in your possession, control, or custody, or of which you have knowledge, including but not limited to, the original and any non-identical copy (whether different from the original because of notes made on said copy or otherwise) of any advertising literature; agreement; bank record or statement; blueprint; book; book of account; booklet; brochure; calendar; catalog; chart; check; circular; coding form; communication (intra- or inter-company); computer printout; computer-readable form; contract; copy; correspondence; database; diary; display; draft of any document; drawing; e-mail; film; film transparency; flyer; forecast; graph; index; instruction; instruction manual or sheet; invoices; job requisition; letter; license; magnetic media of all kinds (including, but not limited to, disks, tapes, or other media) containing computer software with supporting indices, data, documentation, flow charts,

comments, object code, source code, and computer programs relating thereto; landscape drawing; manual; map; memoranda; minute; newspaper or other clipping; note; notebook; opinion; pamphlet; paper; periodical or other publication; photograph; price list; print; printed circuit board; promotional literature; receipt; record; recorded Read Only Memory (ROM); recording; report; solicitation; statement; statistical compilation; stenographic notes, records, or summary of any (a) telephone or intercom conversation or message, (b) personal conversation or interview, or (c) meeting or conference; telegram; telephone calling card; telephone log; technical drawing; tickets; ticket sales records; travel or expense records; video recording; video tape; voice recording; voucher; worksheet or working paper; writing or other handwritten, printed, reproduced, recorded, typewritten, or otherwise produced graphic material from which the information required may be obtained, or any other documentary material of any nature, in the possession, custody or control of defendant.

oppressive. When the purpose of the discovery is to obtain information for reasons other than the prosecution or defense of the lawsuit, unless vital information is at stake, discovery will be denied in its entirety. *Echostar Communications Co. v. News Corp.*, 180 F.R.D. 391, 395–96 (D.Colo.1998). Ocean Atlantic's request for broad discovery into all of the defendants' business activities not involved with the subject development is not only off the mark as legitimate discovery but, even more so, inconsistent with copyright law. A copyright owner's entitlement to recover an accused infringer's profit, if warranted, is limited to profits flowing from the infringing activities. *Leigh v. Engle*, 727 F.2d 113, 138 (7th Cir.1984) Ocean Atlantic has made no attempt to limit the scope of discovery to the activities relating to the alleged infringement at the Liberty Grove site.

This court perceives an improper motive and purpose to this broad discovery. We cannot conceive of any relevance to the claims or defenses asserted in this copyright infringement case, or of any legitimate purpose of this massive discovery demand. The production of virtually the entirety of defendants' business books and records relating to all of its projects could not lead to any admissible evidence. We easily conclude that Ocean Atlantic's demands for this line of discovery dating from 1997—five years prior to Ocean Atlantic's purchase of the Plans—were deliberately employed, in this grudge fight over the lost opportunity to profitably develop the Liberty Grove project, to increase the cost of the litigation that defendants must bear in this lawsuit. We conclude that this oppressive and burdensome discovery was so vexatious and unreasonable that it multiplied the proceedings and was aimed at creating excessive costs for defendants (See 28 U.S.C. § 1927). Pure and simple, it was designed to harass the defendants. It will, of course, be denied.

**B. *Ocean Atlantic's Discovery of Defendants' Business and Financial Records at the Liberty Grove Development Site***

 Copyright law allows a copyright owner to recover his actual damages and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. 17 U.S.C. § 504(b). Since a copyright infringement suit is a form of tort, *Taylor v. Meirick*, 712 F.2d 1112, 1117 (7th Cir.1983) (copyright infringement is a statutory tort), causation still needs to be shown. *See PAR Microsystems, Inc. v. Pinnacle Dev. Corp.*, 995 F.Supp. 658, 661 (N.D.Tex.1998) (causation absent for lost profit). As a result, where the relationship between the profit and infringement is so attenuated or speculative, the plaintiff is not entitled to recover defendant's profits. *Frank Music Corp. v. MGM*, 886 F.2d 1545, 1553 (9th Cir.1989) (downstream corporate profits are too attenuated to the infringing activities to be recoverable). Moreover, if the profits from infringement have been taken into account in computing the actual damages of the same economic transaction, the owner of the copyright is not entitled to recover both. *Taylor*, 712 F.2d at 1120. A copyright owner's entitlement to recover an accused infringer's profit, if warranted, is limited to profits flowing from the infringing activities. *Leigh v. Engle*, 727 F.2d 113, 138 (7th Cir.1984).

 Ocean Atlantic's discovery requests, even those aimed at defendant's financial and business records pertaining to the Liberty Grove project, are outside the scope of legitimate discovery on the issue of Ocean Atlantic's damages and lost profits resulting from the alleged infringement. Actual damages are usually calculated on three bases: first, it could be that but for the infringement, Ocean Atlantic

would have made the profit out of its own sale/use of the work; second, it could be that Ocean Atlantic suffered a loss because the defendant might have purchased the material from Ocean Atlantic; and third, when the defendant reproduced Ocean Atlantic's copyrighted material, it may have damaged Ocean Atlantic to the extent of value of use of the assets in terms of acquisition costs saved by the defendant. *Deltak v. Advanced Systems,* 767 F.2d 357, 360 (7th Cir.1985). Here, because Ocean Atlantic lost its entitlement to develop the land for which the development plan was specifically designed, the market value of the plan is in no way affected by the alleged infringement. The basis for calculating damages is, therefore, either the reasonable cost of acquiring such a plan or the value of Cambridge's use of the plan. The reasonable cost of acquisition is easily ascertainable here through identifying the amount Ocean paid to the original owners of the plans, that being the engineers and architects who created the plans. The value of Cambridge's use (and to a lessor extent use by the other defendants) can be assessed at the saved cost of acquisition. Under either theory, however, any award of profits from the development would constitute double-counting under copyright law.

In cases like this, when a developer pays for the use of the plan and uses it for its intended purpose, the copyright owner's claims are exhausted, because a developer's profit from developing the land is independent from the cost of acquiring the copyrighted plan. As pointed out in *Deltak*, a contractor who hopes to profit from the construction of a building incurs the cost of the architectural plans, whether or not he does actually profit. 767 F.2d at 361. As a corollary, once the developer pays for the acquisition of the architectural plan, whether he makes profits or loses money in constructing the building is of no concern to the copyright owner.[5] We see no material difference between the development plan and architectural works in terms of their respective value to a developer or contractor. In both cases, the profits made by the alleged copyright infringer are the saved acquisition costs. *See Atlantic Monthly Co. v. Post Pub. Co.,* 27 F.2d 556, 560 (D.Mass.1928)(awarding saved acquisition cost as profit made by copyright infringer). Any further award of profits from developing the land would constitute double-counting of damages, as prohibited by the statute. 17 U.S.C. § 504(b).

The proper damages calculation in this case, therefore, is either the amount Ocean Atlantic paid for the acquisition of the plan in the first place, which is readily ascertainable with other discovery not needed, or the value of use or the saved acquisition cost to Cambridge and perhaps the other defendants if used by them. Value of use of infringing work in terms of saved acquisition costs amounts to no more than a determination of what a willing buyer would have been reasonably required to pay a willing seller for Ocean Atlantic's work, the Plans. *Sid & Marty Krofft Television Productions,* 562 F.2d at 1157, 1174 (9th Cir.1977). Such a calculation can come through testimony of experts in the field of large scale home development. It

---

5. The separability of acquisition and development profit can also be explained on a contract basis: when acquiring a development plan, like hiring a truck driver or a construction worker, the developer does not expect to share profits from developing the land with the engineer(s). On the other hand, an engineer who enters into a development contract does not expect to claim profits from developing the land. Accordingly, if Ocean Atlantic's theory is sustained, all of its past engineers can sue Ocean Atlantic for profits made out of its other development projects because Ocean Atlantic's purchase of their Development Plans does not exhaust their rights in the plans -a rather bizarre result.

is only through this evidence that the value of these preliminary drawings could be readily ascertained. Of course, under the facts of this case, we see little likelihood of Ocean Atlantic recovering anything more than what it paid to the engineers for the creation of the development plan in the first place—but that issue is for the fact finder at a later date.

The history of this case further persuades this court that relying on expert testimony is the best solution to the current discovery dispute, if Ocean Atlantic is not content with being compensated for the amount it paid the engineers when it purchased the Plans. Ocean Atlantic first lost the rights to develop the land and the profits therefrom due to its own failure to close on the sale of the land on time. *Arnhold,* 284 F.3d 693. By way of the current copyright infringement suit, Ocean Atlantic again attempts to recover those profits emanating from developing the land, and in this attempt it initiated discovery into every conceivable financial or business record created by defendant's in conjunction with the development of the project. We conclude that Ocean Atlantic's discovery demands will not lead to relevant information, nor will they lead to the discovery of admissible evidence on the issue of damages in this copyright suit. Whatever profits are realized on this development, after engineering, excavation, design, construction, and sale activities, among other things, are completed, they will be so attenuated or distant from the alleged use of the copyrighted development plan, as to render Ocean Atlantic's extensive discovery at Liberty Grove meaningless. Accordingly, these discovery efforts by Ocean Atlantic will likewise be denied.

## III. *SPECIFIC RULING ON OCEAN ATLANTIC'S DISCOVERY*

DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER is granted and both OCEAN ATLANTIC WOODLAND CORPORATION'S MOTIONS TO COMPEL are denied with the following rulings on the parties' respective motions relating to the specific discovery requests.

### A. *Defendant Cowhey's Objections*

This Court finds that Defendant Cowhey's objections to Ocean Atlantic's second set of interrogatories and requests for production are not waived, as Ocean Atlantic argues, because Cowhey joined in Defendants' Joint Motion for Protective Order before Ocean Atlantic filed its motion to compel. This Court finds that Cowhey was attempting to resolve its discovery disputes with Ocean Atlantic. At the point when it appeared the dispute was not going to be resolved, defendants timely filed a motion for protective order. We find that the Joint Motion for Protective Order constituted Cowhey's response to Ocean Atlantic's second set of interrogatories and requests for production.

### B. *Relevant Discovery Period*

In considering DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER, the Court finds the relevant period of time for purposes of discovery propounded upon defendants to be from January 25, 2001, one day after Ocean Atlantic failed to close on the Property, to the present. That is the period in which any conduct by the defendants in the alleged unlawful use of the plans could have been actionable. The Court finds that Ocean Atlantic is not entitled to any discovery of any kind outside this time period.

To the extent not specified to the contrary below, for each discovery request for which this Court grants Defendant's Joint Motion for Protective Order, no further discovery on such subject matter, including inquiry at depositions, shall be had. For each discovery request for which this Court has granted Ocean Atlantic's motion to compel, to the extent not previously

provided or stated in open court or in this order, supplemental discovery responses shall be served within fifteen (15) days of this order (unless defendants appeal the specific ruling).

### C. *Ocean Atlantic's Second Set of Interrogatories to Cambridge*

1. Defendants' Joint Motion for Protective Order is granted with respect to Interrogatory Nos. 1, 2, and 3. These Interrogatories seek information regarding Cambridge's customers and potential customers for the Liberty Grove development. Specifically, they seek individuals' identities, as well as the representations Cambridge made to them relating to the design of the development. We find these interrogatories to be burdensome, unproductive, and of no useful purpose. The identification of customers and potential customers is too attenuated from the copyright infringement damage issues in this case and is without a shred of relevancy to these proceedings. (See our discussion in Section II B hereof.) Likewise, communications with such customers and potential customers have absolutely no relevance to the subject matter of this lawsuit. This includes any correspondence sent to customers or potential customers, as well as memorializations of conversations with customers or potential customers. There is no privity between Ocean Atlantic and such persons, and there is absolutely no relevance to the cause of action or claim of damages found in these Interrogatories. The same is true for Interrogatory No. 3. To the extent Cambridge has provided documents to its customers and potential customers which Ocean Atlantic has obtained, these documents speak for themselves. Concerning the two documents attached to the Annexation Agreement, executed by the Owners of the Property, the Village of Plainfield and Ocean Atlantic, if these documents have been altered and later given to customers, a copy of these document shall be produced or, if already produced, specifically identified.

2. For those reasons above stated in Section II hereof, defendants' Joint Motion for Protective Order is granted with respect to Interrogatory No. 5. Interrogatory No. 5 seeks discovery of Cambridge's profits and revenues, both realized and projected. As earlier discussed, use of the Development Plan is too attenuated from the realization of profits. The Village adopted these plans as a matter of its ordinance structure. Cambridge, in its development activities, followed the annexation plan. Beginning with that point and ending when profits may or may not be realized, with development of full architectural drawings, excavation, installation of sewer, water, and other services, homebuilding, advertising, marketing and selling in between, we conclude that no possible causal connection exists between damages arising from an alleged infringing use of the plans and Cambridge profits. We simply see no relevance between the copyright and evidence concerning profits Cambridge may realize at the Liberty Grove development. So there will be no discovery into the business activities or profits of Cambridge or any defendant. This Court has reviewed the cases cited in Ocean Atlantic's response to the joint motion for a protective order, and is not persuaded that these citations have any application to the issue of damages in this case. A better review of the law on damages Ocean Atlantic may recover is described in Section II hereof. This Court finds Ocean Atlantic's discovery to be burdensome, immaterial, unnecessary and without any rational basis.

3. Defendants' Joint Motion for Protective Order and Ocean Atlantic's motion to compel are granted in part and denied in part with respect to Interrogatory No. 6. Cambridge will supplement its answer to

state clearly what its position is on damages claimed by Ocean Atlantic.

4. Defendants' Joint Motion for Protective Order is granted with respect to Interrogatory No. 7 in which Cambridge is to provide information relating to use and designing of development plats and plans by Cambridge since 1997. (See our discussion in Section II A hereof.) The exact cost of designing this particular design plan and plat is easily obtained by the engineering firm that produced them. The fact that Cambridge may have obtained other design plans and development drawings is irrelevant to any damages resulting from the alleged infringement.

5. Defendants' Joint Motion for Protective Order and Ocean Atlantic's motion to compel are granted in part and denied in part with respect to Interrogatory No. 8. Cambridge need only supplement its answer to state what it believes Ocean Atlantic is entitled to as damages. The remainder of Cambridge's answer to the Interrogatory is sufficient.

### D. Ocean Atlantic's Second Set of Requests for Production of Documents Served on Cambridge

1. Defendants' Joint Motion for Protective Order is granted as to Request Nos. 1 and 2, except with respect to the two documents specified in answer to Interrogatories (which Ocean Atlantic already possesses). The rulings concerning Request Nos. 1 and 2 will follow that given for the Interrogatories seeking the identity of these documents.

2. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 3. For those reasons discussed in Section II B of this order, we find that documents showing profits and other financial documents relating to the development of the Property and projected sale of finished homes to be outside the scope of relevancy under Fed.R.Civ.P. 26(b).

3. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 4. The production of communications with a customer or potential customer of Cambridge concerning the Liberty Grove development is not relevant to the issue of damages in this case. *See* Section II B, at 7–11, *supra.* Additionally, this court feels it would be a disservice to embroil those people who are either interested or who become potential home buyers in Liberty Grove development in this litigation. In any event, the two documents attached to the Annexation Agreement, and those documents given to customers/potential customers, are in Ocean Atlantic's possession. That is all that is required.

4. Defendants' Joint Motion for Protective Order is granted with respect to Request Nos. 5 and 6. for the reasons set forth in Section II B, namely, that requests for financial information for the Liberty Grove development are overly broad, extraordinarily burdensome and, above all, have no relevance to damages in this case.

5. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 7. For the same reasons found in Section II A of this decision, this request is found to be overly broad and unduly burdensome. Profits and losses of Cambridge from 1997 to the present have little application to Ocean Atlantic's now claimed damages. This would be true even if the Court had not rejected Ocean Atlantic's argument that it can recover damages based on Cambridge's profits from the Liberty Grove development.

6. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 8. Discovery of Cambridge's financial documents is too attenuated and entirely too speculative for finding relevancy in computing damages. The rationale

for this ruling is the same as stated in Section II of this Order.

7. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 9. The method by which Cambridge computes its profits and the information it uses in computing its profits is too attenuated from the alleged infringing use of the Development Plans, as discussed in Section II of this Order, to have any relevancy to the issues of this case. This is particularly true as to Request No. 9 because the computation of anticipated profits is an exceedingly speculative proposition, having little bearing on the nature of damages claimed by Ocean Atlantic.

8. Defendants' Joint Motion for Protective Order is granted with respect to Request Nos. 10 and 11. These requests seek financial documents relating to all of Cambridge's annual revenue, expenses, gross profits and net profits since 1997. Again for the reasons set forth in Section II A of this Order, we find these requests to be unnecessary, burdensome and vexatious, since they request documents that have absolutely no relevance to the issues of damages. We also find this discovery to have been imposed for an improper purpose.

9. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 12. The means by which Cambridge calculates and reports the value of its goodwill or reputation as an assets in annual reports, SEC filings or other financial documents has no relevance whatsoever to the use of the Plans or to the issue of damages. This request is unreasonable and imposed for an improper purpose.

10. Defendants' Joint Motion for Protective Order is granted with respect to Request Nos. 13, 14 and 15. These requests seek documents relating to the existence of other possible design plans considered by Cambridge for the development site. The Development Plans for which

Ocean Atlantic claims a copyright interest are part of the approved plan under the ordinances of the Village. The Village has mandated that any development is to be in accordance with the Plans. Whether Cambridge might have looked at or considered other plans, estimates, or projections, has no relevance to liability issues, damages, or the value of the copyright. The information sought can neither provide the intrinsic value of the Plans at issue, nor aid in assessing Ocean Atlantic's damages.

11. Defendants' Joint Motion for Protective Order is granted for Request No. 18. As discussed in Section II A of this order, Cambridge's sales and marketing practices throughout the country for properties other than Liberty Grove are not relevant, and their production would be unduly burdensome. Liberty Grove is a unique development, and the differences between it and other developments are so profound and obvious that we find this request to have been imposed for a vexatious and improper purpose. While we find sales brochures irrelevant to the issue in this case, Cambridge shall, nonetheless, produce one copy of each unique sales brochure being distributed for the Liberty Grove development.

12. Ocean Atlantic's motion to compel with respect to Request No. 20 is granted to the extent that Cambridge shall produce documents that describe the use of the two documents attached to the Annexation Agreement (Development Plans), along with any documents that might identify the documents' cash value.

13. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 21. We find the request for documents that contain information on profits and revenues, both realized and projected, relating to all developments created or in the process of being built, from 1997 to the present to be vexatious, mean

spirited, and burdensome. As ordinary common sense tell us, each individual planned community development is unique and subject to its own economic environment based upon time and place. As discussed earlier in Section II A, we find that Ocean Atlantic's request was obviously intended as a means of harassment, and was imposed for an improper purpose.

14. Defendants' Joint Motion for Protective Order is granted as to Request No. 22. This request is duplicative of Interrogatory No. 8. This Court finds that Cambridge has adequately responded by producing relevant documents.

### E. *Ocean Atlantic's Second Set of Interrogatories to Cowhey*

1. Defendants' Joint Motion for Protective Order is granted as to Interrogatory No. 1. As presently stated, Interrogatory No. 1. is too broad and generalized to convey the particular area of information sought. Ocean Atlantic is given leave to reword Interrogatory No. 1 so as to seek from Cowhey any statement it made to the effect that the two documents attached to the Annexation Agreement were created by Pugsley or Cambridge or Cowhey.

2. Defendants' Joint Motion for Protective Order is granted as to Interrogatory No. 2. Ocean Atlantic, however, is given leave to reword Interrogatory. No. 2 so as to request the identification of the person most knowledgeable concerning Cowhey's (1) earnings; (2) revenues; (3) profits; (4) costs; and (5) accounting methods at the Liberty Grove development.

3. Defendants' Joint Motion for Protective Order is granted as to Interrogatory No. 3. This interrogatory seeks disclosure of Cowhey's profits and revenues, both projected and realized, for work at the Liberty Grove site. As discussed in Section II B of this Order, this interrogatory does not seek relevant information as to Ocean Atlantic's damages. Cowhey has performed, and continues to perform, engineering services distinct from the drawings (Plans) attached to the Annexation Agreement. There is no need for Cowhey to provide its drawings or information on its profits and revenues, relating to engineering services it performs at the development site. We find this interrogatory to be vexatious. In any event, Cowhey reports that it has already produced its engineering plans to Ocean Atlantic. It need not provide any additional documents.

4. Defendants' Joint Motion for Protective Order is granted with respect to Interrogatory No. 4. This interrogatory seeks information on all payments to Cowhey for work related to Liberty Grove. This overly broad interrogatory is vexatious and unduly burdensome as it seeks a significant amount of material that has no relevance to the issues of liability and Ocean Atlantic's damages, as more fully discussed in Section II B of this Order. This request seeks a break down of all payments related to every facet of Cowhey's engineering services, regardless of whether it may relate to the Development Plans. This Court will not burden Cowhey with sifting through hundreds of documents only to find what clearly would be irrelevant information in the first place. The burdensome nature of the request is due to Ocean Atlantic's inability to articulate an interrogatory that seeks relevant information. Therefore, Cowhey need not respond in any manner to Interrogatory No. 4.

5. Ocean Atlantic's motion to compel is granted for Interrogatory No. 5. Cowhey will set forth its contentions as to the value of the Development Plans attached to the Annexation Agreement.

6. Defendants' Joint Motion for Protective Order is granted with respect to Interrogatory No. 6. This request is burdensome and fails to seek relevant information, as discussed in Section II A of this

Order. Liberty Grove, once again, is a unique development; there is no nexus between its costs, profits, and revenues and those of other developments in which Cowhey has worked. We find this line of inquiry to be vexatious and imposed for an improper purpose. Therefore, Cowhey need not respond to Interrogatory No. 6.

7. Ocean Atlantic's motion to compel is granted for Interrogatory No. 7. Cowhey will articulate why it believes Ocean Atlantic is not entitled to any damages.

8. Ocean Atlantic's motion to compel is denied for Interrogatory No. 8. Cowhey will, however, provide a list of its experts at that time when it is required to do so under Fed.R.Civ.P. 26 or by court order.

### F. Ocean Atlantic's Second Set of Requests for Production to Cowhey

1. Defendants' Joint Motion for Protective Order is granted with respect to Request Nos. 1 and 2. These requests seek documents reviewed and relied on in answering companion interrogatories. The two documents attached to the Annexation Agreement (Development Plan) have already been produced.

2. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 3. The reasons for this ruling are identical to the ruling on Request No. 3 to Cambridge. As discussed in Section II B hereof, Cowhey's financial information relating to the development of the property is too attenuated from any damage issues in this case to be within the scope of relevancy under Fed.R.Civ.P. 26(b). Therefore, Cowhey need not respond to Request No. 3.

3. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 4. The reasons for this ruling are identical to the ruling on Request No. 7 to Cambridge. Cowhey's financial documents is determined to have no relevancy to any damage or liability issues in this case, as discussed in Section II hereof. Therefore, Cowhey need not respond to Request No. 4.

4. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 5. The reasons for this ruling are identical to the reasons given for the ruling on Request No. 11 to Cambridge. Cowhey's annual revenue, expenses, and gross profits are not relevant to any issues in this case. Request No. 5, the court believes, was designed to be vexatious and was imposed for an improper purpose. Cowhey need not respond to Request No. 5.

5. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 6. This request seeks documents relating to any payments made to Cowhey for work at Liberty Grove. For those reasons stated in Section II B of this Order, this request is found to be overly broad and seeks documents that are clearly not relevant to the issues in this case. The work that Cowhey has done at the Liberty Grove development goes well beyond the two drawings that are attached to the Annexation Agreement (Development Plans). Cowhey need not respond to Request No. 6. In any event, Cowhey has reported that it has already produced its engineering plans for the project to Ocean Atlantic and this is all that is required of Cowhey under Ocean Atlantic's discovery.

6. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 7. This request is found to be burdensome, vexatious, and not aimed at discovery of relevant information. Discovery into the goodwill component of Cowhey's business, and into its reputation, can add nothing to the computation of Ocean Atlantic's damages. The same is true of Cowhey's annual reports, SEC filings, and other financial documents. Therefore, Cowhey need not respond to Request No.

7. The court finds that this request, like others before it, to have been imposed by Ocean Atlantic solely for harassment purposes.

7. Defendants' Joint Motion for Protective Order is granted with respect to Request No. 8. For the reasons discussed in Section II of this Order, it is found that estimated projections of other plan designs are speculative and have no relationship to the issue of Ocean Atlantic's claimed damages. Cowhey represents that it has already produced all responsive documents. Therefore, Cowhey need not produce anything other than what it has already produced.

8. Ocean Atlantic's motion to compel and Defendants' Joint Motion for Protective Order are granted in part and denied in part with respect to Request No. 9. This request seeks production of all documents relating to any benefits or detriments from use of the Development plans. Although the request is overly broad and vague, Cowhey shall produce any documents that discuss the use of the Development Plans or identifies any saved costs in use of the Plans. Cowhey has represented that responsive documents have been produced.

9. For those reasons set forth in Section II A of this Order, Defendants' Joint Motion for Protective Order is granted with respect to Request No. 10. This is yet another overly broad, vexatious, burdensome request imposed for an improper purpose. The request for Cowhey's sales, marketing practices, procedures, and policies is without any time limitation and seeks production of documents for projects and activities unrelated to the Liberty Grove development. Therefore, Cowhey need not respond to Request No. 10. Ocean Atlantic's request to revise or reword this request is denied.

10. Ocean Atlantic's motion to compel is moot with respect to Request No. 11. Cowhey, represents that it has already produced all responsive documents for Request No. 11.

11. Ocean Atlantic's Motion to Compel and Defendants' Joint Motion for Protective Order are granted in part and denied in part for Requests No. 12. The reasons for this ruling are identical to that for ruling on Request No. 20 to Cambridge. Cowhey need produce only documents that identify its use (including saved costs) or value of the two documents attached to the Annexation Agreement (Development Plans). The protective order is granted to the extent that this request seeks any other types of documents.

12. Defendants' Joint Motion for Protective Order is granted as to Request No. 13. This request seeks documents that relate to costs, profits, revenues, realized or projected, relating to any and all developments created by Cowhey from 1997 to the present. As discussed in Section II A of this Order, this request is improper. Each development has its own unique characteristic in cost, in time, and in place. As such, Request No. 13 is burdensome, vexatious, and specifically imposed upon Cowhey by Ocean Atlantic to create added expense in this litigation. We find that Ocean Atlantic imposed this discovery upon Cowhey for an improper purpose. Cowhey need not respond to Request No. 13.

13. Defendants' Joint Motion For Protective Order is granted with respect to Request No. 14. Cowhey has adequately responded to this request by producing relevant documents.

### G. Ocean Atlantic's Second Set of Interrogatories to Pugsley

1. Ocean Atlantic's motion to compel is granted for Interrogatory No. 5. Pugsley will state its contentions why it believes any damages Ocean Atlantic may have suffered from the alleged infringement amounted to no more than the exact

amount paid to Roake and Lannert for the Development Plans at issue.

2. Defendants' Joint Motion for Protective Order is granted as to Interrogatory No. 6. The reasons for this ruling are identical to that in the ruling on Interrogatory No. 6 to Cowhey. This request is overly broad and vexatious. It seeks information well outside the limit allowed by Fed.R.Civ.P. 26(b). It is found to have been imposed by Ocean Atlantic for improper purposes.

3. Ocean Atlantic's motion to compel is granted for Interrogatory No. 7. Pugsley will state its contentions why it believes that Ocean Atlantic is not entitled to any damages.

### H. Ocean Atlantic's Second Set of Requests for Production to Pugsley

1. Defendants' Joint Motion for Protective Order is granted as to Request No. 1. The reasons for this rulings are identical to the ruling on Request No. 1 to Cowhey.

2. Defendants' Joint Motion for Protective Order is granted as to Request No. 4. The reasons and ruling in granting defendant's motion are identical to its ruling on Request No. 4 to Cowhey. Pugsley's financial documents are not relevant to the computation of Ocean Atlantic's alleged damages. The request is vexatious and imposed for an improper purpose.

3. Defendants' Joint Motion for Protective Order is granted as to Request No. 5. The reasons for this ruling are identical to the ruling on Request No. 5 to Cowhey. Pugsley's annual revenue, expenses, and gross profits are not relevant to any issues in this case. This yet is another vexatious request, imposed for an improper purpose.

4. Ocean Atlantic's motion to compel and Defendants' Joint Motion for Protective Order are granted in part and denied in part for Requests No. 12. The reasons for this ruling are identical to the reasons in the ruling on Request No. 9 to Cowhey. Pugsley will produce any documents that relate to its use (or saved costs) of the two documents attached to the Annexation Agreement (Development Plans). The protective order is granted to the extent that Ocean Atlantic seeks anything more.

5. Defendants' Joint Motion for Protective Order is granted as to Request No. 13. The reasons for this ruling are identical to the reasons in the ruling on Request No. 13 to Cowhey. This request seeks an extraordinary amount of documents involving Pugsley's costs, profits, revenues, realized or projected, relating to any and all developments worked on by Pugsley from 1997 to the present. As discussed in Section II A of this Order, each property on which Pugsley works is unique, with costs and profits distinct from Liberty Grove. This request is burdensome and vexatious, as well as improperly motivated by Ocean Atlantic's desire to create extra expense for Pugsley in this litigation.

6. Defendants' Joint Motion for Protective Order is granted as to Request No. 14. Pugsley has adequately responded to this request by producing relevant documents. Pugsley, in open court, has represented that it has produced all documents responsive to Request No. 14.

### IV. CONCLUSION

For the above stated reasons, as well as those stated in open court during the lengthy hearing on December 10, 2002, this Court enters the above detailed rulings as to each contested discovery motion, granting in part and denying in part defendants' motion for a protective order and Ocean Atlantic's motions to compel.